## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| ALLAN J. D., on behalf of K.A.D., a minor, | Case No. 24-cv-3030 (LMP/TNL) |
| Plaintiff, | |
| v. | **ORDER OVERRULING OBJECTION AND ADOPTING REPORT AND RECOMMENDATION** |
| FRANK BISIGNANO, Commissioner of Social Security, | |
| Defendant. | |

Edward A. Wicklund, **Olinsky Law Group, Syracuse, NY**; and Asha Sharma, **Disability Partners, PLLC, Roseville, MN**, for Plaintiff.

Ana H. Voss, **United States Attorney's Office, Minneapolis, MN**; and James Potter, James D. Sides, and Sophie Doroba, **Social Security Administration, Baltimore, MD**, for Defendant.

Plaintiff Allan J. D. ("Allan D."), on behalf of his minor son K.A.D., appealed a decision by the Commissioner of the Social Security Administration ("SSA") denying supplemental security income ("SSI") benefits to K.A.D. ECF No. 1. The parties litigated the issues in this case before United States Magistrate Judge Tony N. Leung, who issued a Report and Recommendation ("R&R") concluding that the Commissioner's decision should be affirmed. ECF No. 21. Allan D. objects to the R&R's findings and conclusion, *see* ECF No. 22, so the Court reviews de novo the portions of the R&R to which Allan D. objects and reviews the remainder for clear error. After carefully reviewing the R&R and the record in this matter, the Court overrules Allan D.'s objection and adopts the R&R in full.

## BACKGROUND

K.A.D. receives special education services through an individualized education program ("IEP") due to speech, language, and "other health" impairments. ECF No. 9 at 287.[1] K.A.D. exhibits signs of an "information processing condition" which impacts his acquisition of information, organization, planning and sequencing, processing speed, and verbal expression. *Id.* at 299. K.A.D. was diagnosed with attention-deficit/hyperactivity disorder ("ADHD"), adjustment disorder, and a learning disability, *id.* at 459, and was determined to have "moderately delayed" language skills, *id.* at 441–43. Documentation from a 2022 medical evaluation notes that K.A.D. also has a history of asthma and was diagnosed with autism in 2015. *Id.* at 48.

On March 24, 2022, Allan D. applied for SSI benefits on K.A.D.'s behalf, asserting that K.A.D. has been disabled since birth due to his ADHD, asthma, and autism diagnoses, and problems with his feet. *Id.* at 49, 172. The SSA initially denied the application, *id.* at 68–76, and again denied it upon reconsideration, *id.* at 77–86. Allan D. appealed the denial, and a hearing before an administrative law judge ("ALJ") was held on August 7, 2023. *See id.* at 29–43, 87.

At the hearing, the ALJ received evidence, including K.A.D.'s medical and educational records and testimony from K.A.D.'s mother. *See id.* at 20–23. The ALJ found that K.A.D.'s learning disorder, ADHD, autism, and asthma are "severe impairments." *Id.*

---

[1]    For clarity and consistency, the Court cites the page numbers stamped on the bottom-right corner of the pages of the Social Security record (ECF No. 9) rather than the page numbers applied by CM/ECF in the top-right corner.

at 12.  But the ALJ ultimately concluded that none of those impairments, individually or in combination, met or was medically or functionally equivalent to the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See id.* at 12–19.  The ALJ thus determined that K.A.D. is not disabled and not entitled to SSI benefits.  *Id.* at 19.  On October 27, 2023, the ALJ issued a decision affirming the denial of SSI benefits.  *See id.* at 11–19.

The SSA's Appeals Council denied Allan D.'s request for review, and the ALJ's decision became the final decision of the Commissioner on June 10, 2024.  *Id.* at 1–7.  Shortly thereafter, Allan D. brought this action seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  *See generally* ECF No. 1.  Magistrate Judge Leung issued the R&R on April 14, 2025, recommending that the Commissioner's decision be affirmed.  ECF No. 21.  Allan D. timely objects to the R&R.  ECF No. 22; *see* Fed. R. Civ. P. 72(b).  The Commissioner did not respond to Allan D.'s objection.

## STANDARD OF REVIEW

A party may serve and file written objections to a magistrate judge's R&R within fourteen days after being served a copy.  28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(2); D. Minn. L.R. 72.2(b)(1).  If the R&R resolves a dispositive issue, the presiding district judge must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3); D. Minn. L.R. 72.2(b)(3).  When conducting de novo review, the district court "makes its own determinations of disputed issues and

does not decide whether the magistrate's proposed findings are clearly erroneous." *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989). The portions of the R&R to which there is no timely and specific objection are reviewed for clear error. *See United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009). The district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3); D. Minn. L.R. 72.2(b)(3).

## ANALYSIS

Allan D. argues that the R&R does not address a purported legal error the ALJ made and contends that remand is necessary. *See generally* ECF No. 22. Specifically, Allan D. asserts the ALJ improperly applied the standard set forth in 20 C.F.R. § 416.926a in assessing K.A.D.'s degree of functional limitation and incorrectly concluded that K.A.D. is not disabled for the purpose of establishing eligibility for SSI benefits. *Id.* at 1–3.

Upon review of the record, the Court finds that neither the ALJ nor Magistrate Judge Leung misapplied the law and that the ALJ's decision is supported by substantial evidence.

## I.    Legal Framework

### A.    Judicial Review of the Denial of SSI Benefits

When reviewing an ALJ's decision to deny benefits, a court's task "is simply to review the record for legal error and to ensure that the factual findings are supported by substantial evidence." *Hensley v. Barnhart*, 352 F.3d 353, 355 (8th Cir. 2003). "Legal error may be an error of procedure, the use of erroneous legal standards, or an incorrect application of the law." *Lucus v. Saul*, 960 F.3d 1066, 1068 (8th Cir. 2020) (citation omitted). Substantial evidence is a relatively low standard, requiring only that the record

contain "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ross v. O'Malley*, 92 F.4th 775, 778 (8th Cir. 2024) (citation omitted); *see also Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) ("[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high.").

Although courts "defer heavily to the findings and conclusions of the Social Security Administration," a court still "must consider evidence that both supports and detracts from the ALJ's decision." *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (citations omitted). A court will not disturb an ALJ's decision denying benefits so long as the decision "falls within the available zone of choice."[2] *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) (citation omitted). But an ALJ's decision "is not outside of the zone of choice" merely because the court, had it been the initial factfinder, might have rendered a different decision. *Ross*, 92 F.4th at 778. Thus, "[i]f the record supports two inconsistent conclusions, [the] court must affirm the Commissioner's choice among those two conclusions." *Id.* (citation omitted); *see also Hensley*, 352 F.3d at 355 ("We may not reverse merely because the evidence is capable of supporting the opposite conclusion.").

## B.    Eligibility for SSI Benefits Based on Disability

"A minor child is considered disabled and thus entitled to SSI if he or she 'has a medically determinable physical or mental impairment, which results in marked and severe

---

[2]    The "zone of choice" is the range of outcomes that are supported by substantial evidence in the record, even if those outcomes are inconsistent. *See Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988) ("The concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.").

functional limitations,' and which has lasted or is expected to last at least a year." *Brown ex rel. Williams v. Barnhart*, 388 F.3d 1150, 1151 (8th Cir. 2004) (quoting 42 U.S.C. § 1382c(a)(3)(C)(i)). ALJs apply a three-step sequential analysis to determine whether a child is eligible for SSI benefits based on disability. *See Garrett ex rel. Moore v. Barnhart*, 366 F.3d 643, 647 (8th Cir. 2004). "First, the minor child cannot be gainfully employed." *Id.* If that requirement is met, the ALJ next must consider "whether the child's impairment or combination of impairments is 'severe.'" *Id.* Finally, if the child's impairment is found to be "severe," the ALJ must determine whether the child's impairment meets or is medically or functionally equivalent to a listed impairment set forth in Appendix 1 of 20 C.F.R. Part 404, Subpart P. *Id.* If so, and assuming the one-year durational requirement is satisfied, disability is established. *Id.*

The claimant bears the burden of establishing that his impairment meets or is equivalent to a listed impairment. *Schmitt v. Kijakazi*, 27 F.4th 1353, 1358–59 (8th Cir. 2022) (citation omitted). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Likewise, "[f]or a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Id.* at 531. But a claimant "cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Id.*

6

### C.    Assessing Functional Equivalence for Children

To determine whether the severity of a minor child's impairment matches or is equivalent to the severity of a listed impairment, an ALJ must assess how the child's impairment limits his functioning across six domains, including: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1)(i)–(vi).  For a child's impairment to be functionally equivalent to a listed impairment, it "must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain."  *Id.* § 416.926a(a).  A limitation is "marked" if it "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities."  *Id.* § 416.926a(e)(2)(i).  A limitation is "extreme" if it "interferes *very* seriously with [the child's] ability to independently initiate, sustain, or complete activities."  *Id.* § 416.926a(e)(3)(i) (emphasis added).

In making this determination, the ALJ considers, among other things, how the child functions in school and the effects of any medication or other treatments on the child's functioning.  *Id.* § 416.926a(a)(2)–(3).  The ALJ also considers "how appropriately, effectively, and independently [the child] perform[s] [his] activities compared to the performance of other children [his] age who do not have impairments."  *Id.* § 416.926a(b).

## II.    Allan D.'s Objection

With this framework in mind, the Court turns to Allan D.'s objection.  The ALJ determined that K.A.D. satisfied the first two steps of the three-step eligibility analysis because (1) K.A.D. was not gainfully employed and (2) K.A.D.'s learning disorder, ADHD,

autism, and asthma are "severe impairments." ECF No. 9 at 12. But the ALJ concluded that while K.A.D.'s "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . , the allegations concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 15. The ALJ further concluded that there was insufficient medical evidence to establish that K.A.D.'s impairments meet or are equivalent to a listed impairment because K.A.D. has "less than marked limitation" in three of the six domains (acquiring and using information, attending and completing tasks, and health and physical well-being) and "no limitation" in the other three domains (interacting and relating with others, moving about and manipulating objects, and caring for oneself). *Id.* at 12–14.

Allan D. does not specifically identify which of the ALJ's domain-function assessments he contends was legally erroneous, but his argument largely focuses on the domains in which the ALJ determined K.A.D. had "less than marked limitation"—specifically, "acquiring and using information" and "attending and completing tasks."[3] *See* ECF No. 22 at 2–3. Under the "acquiring and using information" domain, the ALJ assesses

---

[3] While the ALJ also found that K.A.D. had "less than marked limitation" in the "health and physical well-being" domain, the Commissioner noted in his briefing that Allan D. is "barred from arguing error with respect to" that domain because Allan D. "does not challenge the ALJ's assessment of [K.A.D.'s] physical condition." ECF No. 19 at 6 (citing *Bearden v. Lemon*, 475 F.3d 926, 930 (8th Cir. 2007)). The R&R similarly construes Allan D. only to be challenging the ALJ's assessment as to the "acquiring and using information" and "attending and completing tasks" domains. *See* ECF No. 21 at 5. Allan D. does not object, specifically or otherwise, to the R&R's characterization of the scope of his challenge, *see* ECF No. 22 at 1–4, so the Court likewise limits its de novo review to the ALJ's assessments under those two domains, *see* Fed. R. Civ. P. 72(b)(3).

"how well [the child] acquire[s] or learn[s] information, and how well [he] use[s] the information [he] ha[s] learned," 20 C.F.R. § 416.926a(g), while the "attending and completing tasks" domain probes "how well [he is] able to focus and maintain [his] attention, and how well [he] begin[s], carr[ies] through and finish[es] [his] activities," *id.* § 416.926a(h).

Allan D. argues that the ALJ misapplied the law in determining K.A.D. has "less than marked limitations" in these domains because the ALJ's findings were based on K.A.D.'s functioning with assistance provided rather than "independently"—that is, without assistance. ECF No. 22 at 2–3. Allan D. further asserts that whether the ALJ's decision is supported by the evidence in the record is irrelevant because the decision itself was the product of a misapplication of the law, and thus the R&R's conclusion affirming the decision is in error. *See id.* at 3–4.

The Court cannot agree. Allan D. contends that the determination of K.A.D.'s functioning "*must* be based on [his] capacity to function 'independently.'" *Id.* at 1. But a review of the controlling regulations shows that this is not the correct standard, and the Court is unaware of—nor does Allan D. cite—any authority that supports his interpretation. To be sure, a child's ability to perform activities independently under each domain relative to his unimpaired peers is an important factor that must be considered. *See* 20 C.F.R. § 416.924a(b)(5)(i) ("We will consider how effectively you function by examining how independently you are able to initiate, sustain, and complete your activities despite your impairment(s), compared to other children your age who do not have impairments."). But the regulations unambiguously require the ALJ to determine "*how* independently" the child

can perform those activities. *E.g.*, *id.* § 416.924a(b)(5)(i)(B) (emphasis added). Indeed, the regulations expressly contemplate that a child may need assistance to complete domain activities and require the ALJ to consider "*how much* extra help" the child needs, which suggests that the fact a child may need assistance, by itself, is not dispositive as to whether the child has a disability within the meaning of the SSI regulations. *See id.* § 416.924a(b)(5)(ii) (emphasis added). Moreover, a child's level of independence when performing various domain activities is only one of several factors that must be considered, which include the range of activities the child can perform, the pace at which the child performs those activities, the amount of effort required to perform the activities, and how long the child can sustain the activities. *Id.* § 416.924a(b)(5)(i)–(iii).

In other words, the question is not strictly *whether* K.A.D. could perform domain activities independently, but rather *the degree to which* he could perform those activities independently. And nothing in the regulations or any other authority suggests that the degree to which a child can independently perform activities under each domain must be accorded greater weight than the other considerations, much less that a finding that a child requires *any* assistance to perform those activities necessarily must result in a finding of disability. Quite the opposite: according to a Social Security Ruling addressing the functional equivalence test for children, "[t]here is no set formula for applying these considerations in each case . . . . The judgment about whether there is a 'marked' or 'extreme' limitation of a domain depends on the importance and frequency of the limited activities and the relative weight of the other considerations . . . ." SSR 09-1P, 2009 WL 396031, at *9 (Feb. 17, 2009).

Here, the ALJ articulated and applied the correct standard, and his written decision reflects a careful consideration of the full record, including evidence that both supports and detracts from his conclusion. *See Wright*, 789 F.3d at 852. In reaching that conclusion, and based on his review of a dynamic record, the ALJ appropriately considered the types and amount of assistance that K.A.D. requires to complete domain activities relative to his peers without impairments, including educational assistance like his IEP and the medication he takes to manage his ADHD. *See* 20 C.F.R. §§ 416.924a(b)(5)(ii), 416.926a(a)(2)–(3).

For example, the ALJ noted that K.A.D. has an IEP and "receives help for staying on task, mathematics, reading, writing, and language" and that K.A.D.'s language skills were "moderately delayed." *Id.* at 15–16, 432, 442. But an evaluation report compiled by K.A.D.'s school in 2021 noted that "[w]hile early standardized testing had resulted in a low/borderline overall intelligence score . . . , this is quite inconsistent with recent testing," which showed K.A.D. "demonstrated average overall intellectual functioning with generally normal (low average to high average) performance . . . in relation to same-aged peers nationally." *Id.* at 273. K.A.D.'s teachers also reported that K.A.D. does "much better" in school when he takes medication to treat his ADHD. *Id.* at 15, 377; *see also id.* at 415 (teacher stating "[K.A.D.] can focus" when he takes his medication). Further, in February 2022—one month before Allan D. submitted K.A.D.'s SSI benefits claim—a physician evaluating K.A.D. noted that K.A.D.'s "[s]chool performance has been good." *Id.* at 15, 328. Perhaps most compelling, the ALJ cited evaluation records from April 2022—one month after K.A.D.'s application was submitted—showing that

according to his teacher at the time, K.A.D. was "able to complete all classroom tasks *independently*." *Id.* at 16, 410 (emphasis added).

Based on a de novo review, in sum, this Court is satisfied that the ALJ considered the full record, applied the appropriate legal standard, and rendered a decision that is supported by substantial evidence. *See Hensley*, 352 F.3d at 355; *Ross*, 92 F.4th at 778. As such, the Court will not disturb the ALJ's findings, and Allan D.'s objection is overruled. *See Buckner*, 646 F.3d at 556. And because the Court does not otherwise detect clear error, the Court adopts the R&R in full. *See Wise*, 588 F.3d at 537 n.5.

### ORDER

Based on the foregoing, and on all the files, records, and proceedings in this matter,

**IT IS HEREBY ORDERED** that:

1.    Allan D.'s Objection to the Report and Recommendation (ECF No. 22) is **OVERRULED**;

2.    The R&R (ECF No. 21) is **ADOPTED IN FULL**;

3.    Allan D.'s Motion for Summary Judgment (ECF No. 15) is **DENIED**;

4.    The Commissioner's Motion for Summary Judgment (ECF No. 19) is **GRANTED**; and

5.    This matter is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: June 2, 2025                    *s/Laura M. Provinzino*
                                       Laura M. Provinzino
                                       United States District Judge

12